UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
CARLOS MACPHERSON,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Petitioner,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:　　　　　**OPINION AND ORDER**
　　　　　　　-against-　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:　　　　　10-CV-4768 (DLI)
UNITED STATES OF AMERICA,　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Respondent.　　　　　　　　:
----------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

　　　　Carlos MacPherson ("petitioner") filed this petition for a writ of *habeas corpus*, challenging his sentence pursuant to 28 U.S.C. § 2255. On June 20, 2007, petitioner pled guilty to one count of conspiring to import heroin and cocaine into the United States, in violation of 21 U.S.C. §§ 963 and 960(b)(2)(A) and (b)(1)(B)(ii). On April 9, 2008, this court sentenced petitioner to 262 months' imprisonment, five years of supervised release, with special conditions, and a $100 special assessment. Petitioner appealed his conviction and sought to withdraw his plea alleging, *inter alia*, that the government, acting in bad faith, breached the plea agreement by advocating for a sentence higher than the range estimated in the plea agreement. *See United States v. MacPherson*, 590 F. 3d 215 (2d Cir. 2009) (per curiam). Because petitioner made this allegation for the first time on appeal, the Second Circuit applied a plain error standard of review and held the government did not breach the plea agreement since "the agreement and the plea colloquy put the defendant on notice that the *Pimentel* estimate was not binding on the prosecutor and that if the estimate was wrong, the plea could not be withdrawn." *Id.* at 219. Accordingly, the judgment of the court was affirmed and petitioner's request to withdraw his plea was denied. *Id.* at 220.

Petitioner now seeks to vacate his sentence or conviction on the ground that his trial attorney rendered ineffective assistance of counsel by failing to object, at the sentencing hearing, to the government's alleged bad faith breach of the plea agreement. (*See* Docket Entry No. 1, Petitioner's Memorandum of Law ("Pet. Mem.").) For the reasons set forth below, the petition is denied in its entirety.

## I. Background

### A. The Plea Agreement

The history of this case warrants some discussion. On June 20, 2007, petitioner entered into a plea agreement with the government wherein he agreed to plead guilty to Count One of the Indictment, which charged him with conspiring to import into the United States 100 grams or more of heroin and five kilograms or more of cocaine. (*See* Docket Entry No. 4, Plea Agreement ("Plea Agrmt.") ¶ 1, attached as Exh. D to Government's Memorandum in Opposition to Petitioner's Motion Pursuant to 28 U.S.C. § 2255 ("Gov't Mem.").) Pursuant to *United States v. Pimentel*, 932 F. 2d 1029 (2d Cir. 1991), the plea agreement contained the government's U.S. Sentencing Guidelines sentence range estimate of 120 to 135 months' imprisonment. (Plea Agrmt. ¶ 2.) As part of the agreement, petitioner stipulated that his sentence should be calculated "based on a drug type and quantity of fifteen kilograms or more of a substance containing cocaine[.]" (*Id.*) The agreement also stated, in pertinent parts:

> The Guidelines estimate set forth in paragraph 2 is **not binding on the Office, the Probation Department or the Court**. If the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is different from the estimate, the defendant will not be entitled to withdraw the plea. (Plea Agrmt. ¶ 3) (emphasis added.)
> …
>
> The Office agrees that: . . . based upon information now known to the Office, it will

> b. take no position concerning where **within the Guidelines range determined by the Court** the sentence should fall; and
>
> c. make no motion for an upward departure under the Sentencing Guidelines.
>
> If information relevant to sentencing, as determined by the Office, becomes known to the Office after the date of this agreement, the Office will not be bound by paragraphs 5(b) and 5(c). Should it be judged by the Office that the defendant has violated any provision of this agreement, the defendant will not be released from his plea of guilty but this Office will be released from its obligations under this agreement[.] (Plea Agrmt. ¶ 5) (emphasis added).

**B. Plea Colloquy**

During the plea hearing, the court notified petitioner, *inter alia*, that the maximum term of imprisonment he faced was life imprisonment and that the mandatory minimum was ten years' imprisonment. (*See* Docket Entry No. 4, Transcript of the Plea Allocution ("Pl. Tr."), dated June 20, 2007, at 16-17, attached as Exh. E to Gov't Mem.) The court then discussed the Sentencing Guidelines and explained to petitioner:

> The bottom line is that until the date of sentencing when we get a presentence report, as I said before, and I hear from you, your lawyer and from the government, we will not know with any certainty what the guidelines will be or whether there will be grounds to depart from them or whether the Court will impose a non-guideline sentence, do you understand that?

(Pl. Tr. at 20.) Petitioner, who was under oath, responded that he understood. (*Id.*) The court told petitioner that it would ask the attorneys to give their best estimate as to what the Guidelines were likely to be, but the court specifically warned petitioner to "please keep in mind that this a guess that could be wrong, do you understand that?" (*Id.*) Petitioner again responded that he understood. (*Id.*) The government estimated the likely Guidelines range would be 120 to 135 months' imprisonment. (*Id.* at 21.) Petitioner's counsel confirmed his agreement with the

3

estimated Guidelines range. (*Id.*) The court then inquired whether petitioner was safety valve eligible and the government indicated he probably was not eligible because "the facts are that [petitioner] was a supervisor." (*Id.*) The court further inquired of petitioner whether he understood "that these are all estimates that are not binding on the government, Probation or the Court?" (*Id.* at 22-23.) Petitioner said he understood. (*Id.* at 23.) The court also asked petitioner if he understood "that if this estimate is wrong, that you will not be permitted to withdraw your plea of guilty?" (*Id.*) Petitioner again stated that he understood. (*Id.*)

The court then discussed the elements of the crime charged in the count to which petitioner was pleading, reading the count to petitioner in its entirety, including that he was charged with the importation of "100 grams or more of a substance containing heroin" and "5 kilograms or more of a substance containing cocaine." (*Id.* at 25.) The court asked petitioner whether he understood the charge. (*Id.* at 26.) Petitioner answered, "Yes." (*Id.*) The court asked petitioner to describe the acts he undertook in connection with the charge. (*Id.*) Petitioner explained that he had traveled repeatedly to Peru to make arrangements to purchase heroin. (*Id.* at 26-28.) Petitioner was less forthcoming regarding his involvement with the cocaine importation. (*Id.* at 28-30.) Petitioner first stated that he "had no participation" and that his only role was "to go to [John F. Kennedy Airport] to pick up the passengers who were carrying [the cocaine]." (*Id.* at 28.) The prosecutor clarified that it was her "understanding that in 2005 the defendant picked up a courier at JFK who was flying from Peru who was carrying approximately ten kilograms of cocaine." (*Id.* at 29.) The court asked petitioner whether this was correct, and petitioner responded "yes." (*Id.*) The court then accepted the petitioner's plea to Count One of the Indictment. (*Id.* at 30.)

### C. Presentence Report and Sentencing Hearing

The Probation Department included in the Presentence Report ("PSR") its determination that petitioner conspired to import 15 kilograms of cocaine and seven kilograms of heroin, which carries a base offense level of 36. (*See* Docket Entry No. 4, Presentence Report ("PSR") ¶¶ 20, 34, attached as Exh. A to Gov't Mem.) The Sentencing Guidelines calculation in the PSR also included a three-level aggravated role enhancement because he was a manager of criminal activity involving more than five participants. (PSR ¶ 37.) After adjusting for the three-level reduction for petitioner's timely acceptance of responsibility, petitioner's adjusted offense level remained 36. (PSR ¶¶ 40-41.) Petitioner's Criminal History Category was determined to be I and the Sentencing Guidelines range was 188 to 235 months. (PSR ¶ 97.) After further review of the facts of the case, the Probation Department submitted an Addendum to the PSR adjusting petitioner's Guidelines range. (*See* Docket Entry No. 4, Addendum to Presentence Report ("Add."), attached as Exh. B to Gov't Mem.) The Probation Department concluded that petitioner's aggravated role adjustment should be increased from three levels to four levels because, rather than being just a manager of criminal activity involving five or more participants, petitioner was an "organizer" of the criminal activity since he "planned, scheduled and completed all organizing tasks for seven drug importation trips, including recruiting the individuals who acted as human couriers . . . and [he] was not working on the orders of a 'boss' or more responsible or culpable conspirator." (Add. at 1.) Accordingly, the Addendum adjusted the applicable Sentencing Guidelines range as 210 to 262 months. (*Id.*)

At sentencing, petitioner objected to the four-level aggravating role enhancement set forth in the Addendum to the PSR. (*See* Docket Entry No. 4, Transcript of the Sentencing Hearing ("St. Tr."), dated April 9, 2008, at 5, attached as Exh. F to Gov't Mem.) Petitioner also

objected to his accountability for seven kilograms of heroin in the calculation of his offense level. (St. Tr. at 8.) The Probation Department determined that petitioner was accountable for seven kilograms because he arranged for seven heroin importation trips, using human couriers who imported approximately one kilogram per trip. (*Id.* at 8-9.) Petitioner argued that only two heroin importation trips took place during the time period alleged in the indictment and, accordingly, his offense level should only be calculated based on two kilograms of heroin. (*Id.* at 9.) The government responded that the court was entitled to consider all relevant conduct in determining an appropriate sentence, which, in this case, included criminal conduct that may have occurred prior to the date of the conspiracy in the indictment. (*Id.* at 9-10.) The court overruled petitioner's objection regarding the inclusion of seven kilograms of heroin in his offense level. (*Id.* at 10.)

Petitioner next argued the four-level role enhancement should not be applied to his Guidelines calculation because, while he admitted to acting in concert with two couriers, he denied having supervisory responsibility over any courier. (*Id.* at 10-11.) The government responded by concurring with Probation's determination that petitioner supervised at least five of his co-defendants, including his father and a confidential source ("CS"). (*Id.* at 12.) The court overruled petitioner's objection to the four-level enhancement and ultimately determined that petitioner's Guidelines range was 210 to 262 months. (*Id.* at 12-13.)

After determining the applicable Guidelines range, the court next solicited argument from the government and defense counsel. The government stated its "position is that a sentence within the guidelines range calculated by Probation is adequate and sufficient for this defendant." (*Id.* at 13.) The government added that petitioner's sentence should accurately reflect his supervisory role, including the fact that he recruited his father as a drug courier, his long history

of narcotics dealings, as well as the 15 kilograms of cocaine and seven kilograms of heroin that petitioner had arranged to bring into the United States. (*Id.* at 13-14.) In response to the petitioner's anticipated downward departure motion for family circumstances, the government contended that such a downward departure was not warranted. (*Id.* at 14-15.) In concluding its argument, the government stated "[c]onsequently, the government's position is that a guideline sentence is appropriate." (*Id.* at 15.)

Defense counsel, in arguing for a below-Guidelines sentence, suggested that the court should consider petitioner's efforts to avail himself of the safety valve by his proffers to the government made on two separate occasions. Counsel urged the court to consider petitioner's efforts and willingness to meet with the government, even though the government ultimately was not satisfied with the proffers. (*Id*. at 15-16.) In response, the court made clear that the court is the ultimate arbiter as to whether or not petitioner was safety valve eligible and that petitioner never requested a safety valve hearing. (*Id.* at 16.) The court further remarked that petitioner apparently was retreating from full acceptance of his responsibility and role in this case and was not being forthright regarding the evidence the government had uncovered about his drug trafficking history. (*Id.*) Defense counsel then conceded he did not request a safety valve hearing because he had determined that, under the circumstances herein, such a hearing would not benefit petitioner. (*Id.* at 17.) In summation, defense counsel emphasized that petitioner did enter into a plea agreement with the government, had accepted responsibility for his actions, has a supportive family and, based on these factors, petitioner asked the court to impose a sentence below the Guidelines range determined by the court. (*Id.* at 17-18.)

Petitioner himself then addressed the court, apologized for his actions, and again emphasized that he did take it upon himself to meet with the government to "clear up my case,"

7

but that "unfortunately" he did not receive the safety valve. (*Id.* at 18.) Petitioner again apologized and asked for forgiveness. (*Id.*) At this point, because petitioner had brought up the safety valve issue multiple times, the government asked if it might briefly address the issue. (*Id.* at 19.) The government then stressed that, while petitioner did meet with the government on two occasions for proffer sessions, it had informed petitioner prior to commencing the proffer sessions that he was not safety valve eligible because of his role in the offense. (*Id.*) Instead, the proffer sessions were for informational purposes only. (*Id.*) Moreover, between the first and second proffer sessions, the government learned that petitioner, while in custody, wrote and mailed a letter to the CS, wherein petitioner demanded money from the CS because the CS cooperated with the government and helped put petitioner in jail. (*Id.* at 19-20.) As a result, the government spent almost ninety percent of the second proffer session discussing the letter with petitioner and informing him that his actions were inappropriate. (*Id.* at 20.) Defense counsel then conceded that he had been in error and the government had correctly represented that the proffer sessions were not for safety valve eligibility, but for information gathering only. (*Id.*)

The court then reviewed the factors pursuant to 18 U.S.C. § 3553(a) ("3553(a) factors") and determined that a lower non-Guidelines sentence was not appropriate. (*Id.* at 22-23.) The court specifically noted that petitioner became an organizer of "his own drug organization," imported drugs, which have had a "devastating effect on our society," preyed upon his "codefendants when they were facing dire family situations" and "enticed them into helping [petitioner] to bring drugs into this country." (*Id.* at 24.) The court also noted that, despite the letters from family and friends all highlighting what a great son petitioner is, that petitioner, in fact, involved his own father in the conspiracy as a drug courier. (*Id.*) The court reminded petitioner, that the court had already sentenced some of petitioner's codefendants and, that, as a

8

result, the court was very familiar with the facts and circumstances of the case. (*Id.*) The court further noted that it was apparent petitioner was not being forthright or fully accepting his responsibility. (*Id.* at 25.) The court then imposed a sentence of 262 months' imprisonment, five years of supervised release, and a $100 special assessment. (*Id.* at 26-27.)

## II. Discussion

### A. Petitioner's Claims Denied on Direct Appeal

Significantly, as an initial matter, the court notes petitioner reasserts the same challenge to his plea agreement, which the Second Circuit already rejected on direct appeal, by cloaking it as an ineffective assistance of counsel claim. *See United States v. MacPherson*, 590 F. 3d 215 (2d Cir. 2009) (per curiam). While traditional notions of res judicata do not apply in § 2255 proceedings, *Sanders v. United States*, 373 U.S. 1, 8 (1963), a court may exercise judicial discretion and refuse to retry issues fully and finally litigated on direct appeal. *See Ashraf v. United States*, 2010 WL 2985653, at *2 (E.D.N.Y. July 22, 2010) ("It is well settled that a § 2255 motion to vacate sentence cannot be employed to relitigate questions which were raised and considered on the appeal." (quoting *Giacalone v. United States*, 739 F. 2d 40, 42 (2d Cir. 1984))); *see also Furman v. United States*, 720 F. 2d 263, 266 (2d Cir. 1983) (district court properly denied petitioner's § 2255 motion to vacate his conviction where all of petitioner's contentions in his petition were previously denied on direct appeal). Because this matter was already decided adversely against petitioner on direct appeal, the petition should be denied on this ground alone. However, since the Second Circuit did not discuss the issue of bad faith explicitly in its written decision, nor was the claim of ineffective assistance of counsel raised on direct appeal, this court will address the merits of the petition. For the reasons set forth below, petitioner's request for relief is denied in its entirety.

### B. Government's Alleged Bad Faith Breach of Plea Agreement

It is well-settled in the Second Circuit that plea agreements "are construed according to contract law principles[.]" *United States v. Green*, 595 F. 3d 432, 438 (2d Cir. 2010). Further, plea agreements are construed against the government, and a reviewing court must not hesitate to examine the conduct of the government to ensure it "comports with the highest standard of fairness." *United States v. Vaval*, 404 F. 3d 144, 152 (2d Cir. 2005) (citing *United States v. Lawlor*, 168 F. 3d 633, 637 (2d Cir. 1999)). In determining whether a plea agreement has been breached, courts look to "what the parties reasonably understood to be the terms of the agreement." *Id.* (citing *Lawlor*, 168 F. 3d at 636) (internal quotation marks omitted). Moreover, "[a] plea colloquy can be examined to determine a defendant's understanding of a plea agreement." *MacPherson*, 590 F. 3d at 223 (Newman, J., concurring) (citations omitted).

(i)     Stipulation

Relying on *United States v. Lawlor*, 168 F. 3d 633 (2d Cir. 1999), petitioner contends the government breached the plea agreement by advocating for a Guidelines sentence based on the on 15 kilograms cocaine and seven kilograms of heroin, instead of just the 15 kilograms of cocaine stipulated in the plea agreement.[1] (Pet. Mem. at 13-14.) Petitioner's argument is meritless as his characterization of the plea agreement is factually incorrect.

In *Lawlor*, the government did breach a plea agreement where it stipulated a specific Sentencing Guideline was applicable to the calculation of the defendant's sentence, but later advocated for the application of a different Sentencing Guideline. 168 F. 3d at 637. Here, unlike *Lawlor* and despite petitioner's claims to the contrary, the government never stipulated to the

---

[1] As the Court of Appeals noted in denying petitioner's claim on appeal, petitioner never raised this argument at the time of sentence, but raised it for the first time on appeal. *See MacPherson*, 590 F. 3d at 219.

drug type or quantity to be used in the calculation of petitioner's sentence. Rather, as the Second Circuit already made clear on direct appeal, "the agreement in this case states only that *the defendant* stipulates to a sentence based on the cocaine quantity." *MacPherson*, 590 F. 3d at 219 (emphasis in the original). Because the government was never a party to the stipulation, any advocacy on its part that the calculation of petitioner's sentence should include the seven kilograms of heroin could not constitute a breach of the plea agreement.

(ii) Guidelines Estimate

Petitioner next argues the government breached the plea agreement because the government could not have acted in good faith in setting forth the Guidelines estimate contained in the plea agreement. (*See* Pet. Mem. at 15-19.) Specifically, petitioner maintains the government was aware of the seven kilograms of heroin as well as petitioner's supervisory role in the conspiracy, but intentionally "low-balled" the estimate by not including these factors in the estimate calculation, as a means to induce petitioner to plead guilty. (*Id.*) The government then, allegedly in bad faith, changed its position at sentencing and "'without new justifying facts,' unreasonably 'changed [petitioner's] exposure so dramatically as to raise doubts whether [petitioner] could reasonably be seen to have understood the risk of the agreement.'" (*Id.* at 17 (citing *United States v. Habbas*, 527 F. 3d 266, 271 (2d Cir. 2008).) The court disagrees. Rather, after a careful review of the record, the court concludes that the government did not act in bad faith.

As an initial matter, the Second Circuit already found that the plea agreement and the court's colloquy with petitioner at the time he pled guilty put petitioner on notice that the estimate was not binding on the prosecutor, Probation or the court and that the plea could not be withdrawn if the estimate was wrong. *See MacPherson*, 590 F. 3d at 219. Further, the Second

11

Circuit previously has held that similar language in a plea agreement "expressly left [the government] free to argue for positions that were directly inconsistent with the estimate set forth in the agreement." *United States v. Enriquez,* 42 F. 3d 769, 773 (2d Cir. 1994). Moreover, in the court's view, petitioner evinced an understanding, at the plea colloquy and sentencing, that he risked exposure to a higher sentence than the estimate set forth in the plea agreement. Petitioner was aware of the possibility that his sentence likely would take into account his heroin importation, as petitioner specifically allocuted, at the plea colloquy, to his role in the heroin conspiracy along with the cocaine conspiracy. (Pl. Tr. at 26-30.) Additionally, petitioner was put on notice during the plea colloquy that the government considered him a supervisor and, thus probably would not be safety valve eligible. A position not contested by petitioner or his attorney. (*Id.* at 21-21.)

Because petitioner was aware he probably would receive a high sentence, he attempted to minimize his role and responsibility in the conspiracy during the sentencing hearing. For example, petitioner freely acknowledged that he conspired to import heroin, but felt he should only be held accountable for the importation of two kilograms because the remaining heroin was imported prior to the dates covered in the indictment. (St. Tr. at 9.) Moreover, at sentencing, petitioner took responsibility only for his involvement with his father and another individual and denied his supervisory role, despite having been indicted with several co-conspirators and despite Probation's conclusion, with which the court and the government agreed, and which ultimately defense counsel conceded, that petitioner supervised at least five individuals. (St. Tr. at 10-12.) Petitioner's allocution to the heroin conspiracy and his awareness that the government considered him a supervisor, along with his attempt to minimize his responsibility, which this

12

court took note of on the record, (*id.* at 11, 16, 25), shows he was well aware that he risked exposure to a much greater sentence than what was estimated in the plea agreement.

Furthermore, petitioner's argument that the government acted in bad faith by "intentionally low-balling" its initial estimate is simply not supported by the record. As the Second Circuit noted, "[t]he Guidelines are long and complex, and *Pimentel* estimates are generally made in haste when the possibility arises to dispose of a case through a plea agreement." *United States v. Habbas*, 527 F. 3d 266, 272 n.1 (2d Cir. 2008). In *Habbas*, the government prepared a *Pimentel* estimate, but failed to calculate the defendant's supervisory role when calculating the estimate. *Id.* at 270. Subsequently, as in the instant matter, the Probation Department recommended a four-level upward adjustment pursuant to U.S.S.G. § 3B 1.1(a) because of the defendant's leadership role, which the government supported during defendant's sentencing. *Id.* The Second Circuit concluded the government's endorsement of the four-level enhancement was not a breach of the plea agreement nor the result of bad faith, but instead, "under the pressures of preparing a *Pimentel* estimate after the defendant indicated readiness to plead, the government simply failed to notice the possible applicability of § 3B1.1(a)." *Id.* at 271. Here, the fact that the Probation Department did not determine § 3B1.1(a) was applicable to petitioner until it had completed an Addendum to the PSR suggests that, at the time of furnishing the estimate, the government also simply failed to notice the applicability of the four-level enhancement. Similarly, while the government was aware of petitioner's heroin importation, nothing suggests that the government was aware, at the time of the plea, that petitioner conspired to import seven kilograms. Accordingly, the record does not support the conclusion that the government acted in bad faith by withholding information to induce the petitioner's plea. Rather, the court concludes that the government changed its position as a result

13

of further investigation by the Probation Department, which revealed the applicability of additional Guidelines provisions that were not included in making the estimate in the plea agreement. This is an entirely permissible action for the government to take. *See Habbas*, 527 F. 3d at 272 n.1 ("furnishing of a *Pimentel* estimate will not bar the government from making good-faith changes to its position, even as to information already in its possession, if, for instance, further study shows the applicability of guideline provisions not considered in making the estimate.").

Finally, any argument that the government acted in bad faith is belied by the fact that when the government learned petitioner, after entering into the plea agreement and while still incarcerated, sent a letter to the CS demanding money because of the CS's cooperation with the government, the government refrained from bringing the information to the attention of the court in connection with petitioner's sentence. This borderline extortionist letter certainly constituted new information relevant to sentencing that, in this court's view, relieved the government of its obligations under paragraphs 5(b) and (c) of the plea agreement. Nonetheless, the government only brought the new information to the court's attention in response to the petitioner's erroneous insistence, made in the attempt to receive a lighter sentence, that he had engaged in two proffer sessions to avail himself of the safety valve. (St. Tr. at 15, 18-19.) That the government could have terminated its obligations under the plea agreement and advocated for a much higher sentencing range, but chose, instead, to honor its agreement and advocated for a sentence within the Guidelines range determined by the court supports the court's conclusion that the government indeed acted in good faith.

### C. Alleged Unjustifiable Advocacy

Petitioner next argues the government engaged in unjustifiable advocacy at the sentencing hearing, in direct breach of the plea agreement, by: 1) advocating for a sentence "within the guidelines range calculated by Probation;" and 2) by "argumentatively relating" the facts of petitioner's crime and his criminal history. (*See* Pet. Mem. at 19, 20-21 (citing St. Tr. at 13-14).) Petitioner's claims are without merit.

With respect to the first claim, the plea agreement obligated the government to "take no position concerning where within the Guidelines range **determined by the Court** the sentence should fall[.]" (Plea Agrmt. ¶ 5(b)) (emphasis added). The government complied with this obligation. At sentencing, the court determined that petitioner's applicable Guidelines range was 210 to 262 months' imprisonment, which is the same range recommended by the Probation Department. (St. Tr. at 13.) After the court determined petitioner's Guidelines range, the government stated that "a sentence within the guidelines range calculated by Probation is adequate and sufficient for this defendant." (*Id*.) The government concluded its remarks by stating, "the government's position is that a guideline sentence is appropriate." (*Id.* at 15.) Because the court adopted the Probation Department's Guidelines recommendation, the government's advocacy for a sentence within the range estimated by Probation, was, in fact, advocacy for a sentence within the range determined by the court, in conformity with the plea agreement. Accordingly, the government's advocacy did not breach the plea agreement.

Petitioner also claims that the government violated its agreement not to seek an upward departure or take any position about where within the Guidelines range petitioner should be sentenced by "argumentatively relating" the facts of petitioner's crime and his criminal history. Thus, the government breached the agreement by engaging in unjustifiable advocacy of a

15

sentencing range greater than the estimate in the plea agreement. The court disagrees. The plea agreement expressly authorized the government to "advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant, [which] information may be used by the Court in determining the defendant's sentence." (Plea Agrmt. ¶ 2.) Upon review of the record, the court concludes the government's statements did not rise to the level of unjustifiable advocacy, but remained within the boundary of information relevant to sentencing.

Petitioner, in arguing otherwise, analogizes his case to *United States v. Vaval*, 404 F. 3d 144 (2d Cir. 2005). The comparison is inapposite. In *Vaval* the government breached its agreement to take no position concerning where within the Guidelines range the defendant's sentence would fall when it "volunteered highly negative characterizations of [defendant]'s criminal history" by describing the history as "appalling" and describing his remorse as "disingenuous." *Id.* at 153. Here, the government did not make the kind of incendiary comments it did in *Vaval*. Rather, the government informed the court about: 1) petitioner's supervisory role; 2) the fact that he recruited his own father as a courier; 3) the quantity and type of the controlled substances that petitioner imported; and 4) the fact that petitioner had a long history of criminal conduct. (*See* St. Tr. at 13-14.) This was all information already contained in the PSR. Such "mild, non-provocative, merely informative, and substantially justified" comments do not constitute a breach of the agreement. *United States v. Amico*, 416 F. 3d 163, 168 (2d. 2005). The government also stated petitioner's sentence "should reflect the fact that his criminal conduct is not an aberration but, rather, a pattern of behavior." (St. Tr. at 14.) Given that petitioner pled guilty to engaging in a narcotics conspiracy that spanned a number of years, and the PSR described petitioner's rise from a low level courier to leadership of his own

narcotics importation network, (*see* PSR ¶ 21), the court finds this comment, when viewed in the context of the government's entire statement, does not rise to the level of unjustifiable advocacy. Accordingly, the government did not breach the plea agreement.

### D. Ineffective Assistance of Counsel Claim

Ineffective assistance of counsel claims are assessed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland,* a petitioner must show that (1) his counsel's representation "fell below an objective standard of reasonableness" measured by "prevailing professional norms," *id.* at 688, and that (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Here, petitioner claims his trial counsel rendered ineffective assistance for failing to challenge, at sentencing, the prosecutor's alleged bad faith breach of the plea agreement. (Pet. Mem. at 3.) However, this court concludes, as the Second Circuit previously concluded upon plain error review, the government did not breach the plea agreement in this case. *See MacPherson*, 590 F. 3d at 220. Because the government did not breach the plea agreement petitioner's ineffectiveness claim cannot succeed, since petitioner was not prejudiced by his counsel's failure to object. Accordingly, petitioner's ineffectiveness claim is entirely without merit.[2]

---

[2] Petitioner also asks to be resentenced before a different court, if his petition is granted. (Pet. Mem. at 23.) Because his petition is denied, this issue is moot and need not be addressed.

**III. Conclusion**

For the reasons set forth above, petitioner's request for relief pursuant to 28 U.S.C. § 2255 on the grounds of ineffective assistance of counsel is denied in its entirety. Because petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability shall issue. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from a judgment denying this petition would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

DATED: Brooklyn, New York
August 9, 2012

_____/s/_____

DORA L. IRIZARRY
United States District Judge